Filed 4/22/16  In re E.N. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.N., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>E.N.,<br><br>        Defendant and Appellant. | A145340<br><br>(Alameda County<br>Super. Ct. No. J186329) |

Defendant E.N., then age 17, was the subject of multiple wardship petitions filed by the district attorney in 2015 pursuant to Welfare and Institutions Code section 602, subdivision (a).  Pursuant to plea agreements, E.N. admitted two counts of misdemeanor unauthorized use of a vehicle and one count of misdemeanor receiving stolen property. He was adjudicated a ward of the court, which imposed various conditions of probation. At issue here are two of those conditions: one that prohibits him from possessing any weapons or explosives (weapons condition), and another that prohibits him from being on the grounds of any school that he is not enrolled in except under certain circumstances (school grounds condition).  E.N. argues that both conditions are unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), that the weapons condition is unconstitutionally vague, and that the school grounds condition is unconstitutionally vague and overbroad.

1

We conclude that both conditions are reasonable under *Lent*, and that the school grounds condition is not vague or overbroad. We will modify the weapons condition to address E.N.'s arguments that it is unconstitutionally vague.

## FACTUAL AND PROCEDURAL BACKGROUND

We draw our statement of the facts underlying this case from reports prepared by the police and by the Alameda County Probation Department.

A.      *First Wardship Petition*

On December 21, 2014, a police officer stopped a car because it did not have a front license plate. E.N. was driving the car, and when he exited it, he took a backpack with him. The vehicle had been reported stolen, and contained two license plates that did not belong to the registered owner of the vehicle. As the police officer was searching E.N. for weapons, a methamphetamine smoking pipe fell out of E.N.'s pant leg. A search of the backpack revealed a designer watch, a Kindle Fire tablet, an iPod, a Nikon digital camera, a Georgia driver's license in the name of a female, and a small amount of a substance that later tested positive for methamphetamine. E.N. also had in his possession a cell phone that revealed a text message in which he attempted to sell a Kindle Fire tablet, and a number of "shaved" keys.[1] The camera contained pictures of E.N. holding a methamphetamine smoking pipe, wrapping a substance in a clear plastic bag, and counting money. E.N. admitted stealing the car, but denied being in possession of methamphetamine. He said that the pipe that fell out of his pants leg did not belong to him.

E.N. was released to his father.

On January 29, 2015, the district attorney filed a wardship petition pursuant to Welfare and Institutions Code section 602, subdivision (a), alleging four counts: felony theft or unauthorized use of a vehicle, in violation of Vehicle Code section 10851, subdivision (a); misdemeanor receipt of stolen property in violation of Penal Code

---

[1] A "shaved" key is a filed-down car key used to enter or start a car other than the one for which the key was designed. (*People v. Najera* (2008) 43 Cal.4th 1132, 1135.)

2

section 496; misdemeanor possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a); and misdemeanor possession of drug paraphernalia in violation of Health and Safety Code section 13364.

A pretrial hearing was held on February 13, 2015, and continued to March 4, by which time E.N. was to have interviewed with the public defender's office.

B.      *Amendment to First Wardship Petition*

On March 3, 2015, a police officer stopped a car that E.N. was driving because it passed another vehicle across solid double yellow lines. When he was approached by the officer, E.N. showed the officer a school identification card. Asked if he had a driver's license, E.N. responded that had never had one. The officer determined that the car had been stolen, and arrested E.N. After he was told his *Miranda* rights, E.N. said that he got the car from a friend who offered to loan it to him for $50. E.N. was detained by the Probation Department at the Juvenile Justice Center.

On March 4, E.N.'s pretrial hearing was continued to March 6, to proceed with a detention hearing for charges arising from the events of March 3, 2015, which had not yet been filed.

On March 5, 2015, the district attorney filed an amendment to the January wardship petition, adding three counts: an additional count of felony theft or unauthorized use of a vehicle, in violation of Vehicle Code section 10851, subdivision (a); one count of felony receipt of a stolen vehicle, in violation of Penal Code section 496.d, subdivision (a); and one count of driving without a license, in violation of Vehicle Code section 12500, subdivision (a), a misdemeanor.

By the March 6, 2015 hearing, the juvenile court had read and considered reports from the Probation Department regarding the original and amended petition. At the hearing, the district attorney moved to amend the felony theft-or-unauthorized-use counts to misdemeanors. E.N. admitted the two misdemeanor counts under Vehicle Code section 10851, subdivision (a), and the remaining counts were dismissed upon the district attorney's motion. E.N. was released from juvenile hall to his mother on electronic monitoring, and a disposition hearing was scheduled for April 10, 2015.

E.N. did not appear for the April hearing: on March 18, 2015, he cut off the electronic monitoring device and left home. He was eventually arrested on May 2, 2015, after a registration check on a vehicle he was driving matched the description of a stolen car.

C.    *Second Wardship Petition*

Meanwhile, on April 30, 2015, a police officer responded to a report of a vehicle break-in. Among the items taken were credit cards, and the police investigation identified E.N. as having used them to make purchases after the break-in. On May 2, an investigating officer was alerted that E.N. was being arrested in connection with the registration check, and reported to the scene of the arrest. The officer searched the vehicle and found items belonging to the victim of the theft, as well as several other credit cards, gift cards, and a handicap parking placard, none of which belonged to E.N.

On May 6, 2015, the district attorney filed a subsequent wardship petition, which contained three felony counts: auto burglary in violation of Penal Code section 459; obtaining and using personal identifying information in violation of Penal Code section 530.5; and receipt of stolen property valued at over $950, in violation of Penal Code section 496.

At a detention hearing on May 7, 2015, the district attorney moved to amend the felony receipt of stolen property count to a misdemeanor. E.N. admitted that misdemeanor count, and the remaining two counts were dismissed upon the district attorney's motion. E.N. was returned to the Juvenile Justice Center, pending disposition.

D.    *Disposition Hearing*

A disposition hearing on both petitions was held on May 19, 2015. In a preliminary statement to the juvenile court, E.N.'s counsel provided some procedural background, noted that E.N. had not been in trouble before the initial petition was filed, and stated that E.N. had been in custody for almost three weeks. E.N.'s counsel addressed the Probation Department's recommendation that a weapons restriction be imposed: "I would object to the weapons restriction. I don't believe that any of his offenses whether admitted or dismissed had anything to do with any sort of weapons or

4

violence, so I don't believe that is appropriate." E.N.'s counsel also addressed the Probation Department's recommendation that E.N. perform 80 hours of community service and participate in five consecutive Weekend Training Academies (WETAs), for a program of citizenship training and work: "Typically on a first offense, I think the Court would impose maybe 40 hours of community service or four WETA weekends. We typically don't do both. If the Court feels both are appropriate I would ask in the range of 40 community service or four WETAs."

In response to defense counsel's statement, the prosecutor described this as "a remarkable case." Even though it was E.N.'s first dispositional hearing, "he was caught with a stolen car in December of 2014. Then he was caught with another stolen car in March and he was released and he disappeared and he really upped the ante. Knowing he had two pending cases he ended up breaking into a parked car. He ended up with a mountain of people's credit cards, personal identifying information and was using all of this going in and out of Target and other stores to buy stuff. He is very, very entrenched in this lifestyle. . . . [¶] . . . In terms of all of the community service and WETAs—here's a young man who has so much free time—he's not in school, he's not employed—he's not doing anything. He has plenty of time to fill in with WETAs and community service. And if he doesn't turn it around soon he will go to adult jail."

The Probation Department urged that E.N. have community service and WETAs to complete: "It is a way of keeping him busy and also so the probation officer can keep a tight constraint on him. He only has a short time until he's 18. And so we want to make sure this doesn't happen again."

Before imposing probation, the judge addressed E.N.: "I don't know what happened in the last year or so, but from being a—sure, you weren't perfect, but you at least weren't in a lot of trouble up until a year ago. And then all of a sudden there's a tidal wave of trouble you're a part of, and you seem to show a level of sophistication in your criminal activity. And who knows how far you would have gone. [¶] . . . You are going to be working with Probation. And in juvenile court what we try to do is give you an opportunity to become law abiding to help you stay out of the system—open up

opportunities of yourself, make something of yourself. I don't think one of your dreams is to spend a lot of time in jail."

E.N. was adjudged a ward of the juvenile court, which committed him to the care, custody and control of the Probation Department and ordered him to live with his mother on electronic monitoring.

The juvenile court imposed a number of probation conditions, including a school grounds condition: "You are not to be on the campus or grounds of any school unless enrolled, accompanied by parent, guardian or responsible adults, authorized by prior permission of school authorities." E.N.'s counsel objected: "I wanted to object to that condition for the record. I don't think it has anything to do with any of the offenses that have been alleged." The juvenile court then asked, "Is that something Probation wants?" The Probation Department had recommended that condition in its dispositional reports, and the district attorney responded to the question, "It's a standard term of condition, and I think it's reasonably related pursuant to [t]end to accomplish the [goal] of rehabilitating him from loitering on campuses where he has no business." The juvenile court imposed the school grounds condition without modification. The juvenile court also imposed a weapons condition: "You are not to possess, own or handle any firearm, knives, weapons, fireworks, explosives or chemicals that can produce explosives."[2]

This appeal timely followed.

## DISCUSSION

A.    *Applicable Law*

The juvenile court is authorized to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code,

---

[2] The wording of the conditions differs slightly between the reporter's transcript and the clerk's transcript. The parties agree that the oral pronouncement of the conditions should control, and we address the conditions as recorded in the reporter's transcript.

6

§ 730, subd. (b).)  We review the juvenile court's probation conditions for abuse of discretion.  (*In re P.A.* (2012) 211 Cal.App.4th 23, 33.)

Well-established legal principles govern our review.  " 'The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents' [citation], thereby occupying a 'unique role . . . in caring for the minor's well being.' [Citation.]  [¶] The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults.  '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults." ' [Citation.] . . . Thus, ' "a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court." ' [Citations.]"  (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*).)

The juvenile court's discretion in imposing conditions of probation is broad but not unlimited.  (*In re D.G.* (2010) 187 Cal.App.4th 47, 52 (*D.G.*).)  Our Supreme Court has stated criteria for assessing the validity of a probation condition:  upon review, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality[.]' "  (*Lent, supra,* 15 Cal.3d at p. 486.)  "Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality."  (*Ibid.*)  Adult and juvenile probation conditions are judged by the *Lent* standard.  (*D.G.*, *supra*, 187 Cal.App.4th at p. 52.)  A condition that would be improper for an adult is permissible for a juvenile only if it is tailored specifically to meet the needs of the juvenile.  (*Id.* at p. 53.)  In determining reasonableness, courts look to the juvenile's offenses and to the juvenile's entire social history.  (*Ibid.*)

The *Lent* test for reasonableness "is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term."  (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).)  Consequently, for any condition, there are

7

potentially three questions to address: Is it unrelated to the offense at issue? Does it relate to conduct that is not in itself criminal? Does the condition require or forbid conduct that is not reasonably related to future criminality? (See *Ibid.*) If the answer to all three questions is "yes," the condition is invalid under *Lent*. If the answer to any of the questions is "no," the condition is valid under *Lent*. (See *Ibid.*) This means that if, in light of a juvenile's offenses and social history, a probation condition requires or forbids conduct that is reasonably related to future criminality, we need look no further: the condition is valid under *Lent*.

The reasonableness standard set forth in *Lent* is not the only limit on the juvenile court's discretion. Probation conditions are subject to constitutional challenges on the grounds of vagueness or overbreadth. "A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' " (*Olguin*, *supra*, 45 Cal.4th at p. 382, quoting *People v. Bravo* (1987) 43 Cal.3d 600, 606.) "Under the void for vagueness doctrine, based on the due process concept of fair warning, an order ' "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' ([*In re*] *Sheena K.*[ (2007)] 40 Cal.4th [875,] 890 [(*Sheena K.*)].) The doctrine invalidates a condition of probation ' " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' (*Ibid.*) By failing to clearly define the prohibited conduct, a vague condition of probation allows law enforcement and the courts to apply the restriction on an ' " '*ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " ' (*Ibid.*)" (*Victor L.*, *supra*, 182 Cal.App.4th at p. 910.)

By contrast, "[t]he essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

If a vague or overbroad probation condition can be modified "without reference to the particular sentencing record developed in the trial court" (*Sheena K.*, *supra*, 40 Cal.4th at p. 887), an issue of law arises that is subject to de novo review on appeal. (*People v. Mendez* (2013) 221 Cal.App.4th 1167, 1172.)

With these principles in mind, we turn to E.N.'s challenges to his probation conditions.

B.    *Analysis*

      1.    *Weapons Condition*

           a.    *Reasonableness*

E.N. argues that the weapons condition is unreasonable under *Lent*, on the grounds that it has no relationship to his offenses, whether admitted or dismissed; it relates to conduct that is not itself criminal; and it is not reasonably related to future criminality. The attorney general concedes that the condition is not related to E.N.'s offenses, and argues that it is reasonable under *Lent* because it relates to criminal conduct and to preventing future criminality.

The key issue for the *Lent* analysis here, and the one that both parties emphasize in their briefs, is whether the condition is reasonably related to future criminality. E.N. argues that it is not related, because the record is silent as to E.N.'s use or possession of any weapons.[3] The attorney general argues that the condition is related to future criminality, because E.N.'s social history shows the potential for violence, reflected in his mother's informing the Probation Department that he throws tantrums when he does not get his way, and throws "fits." E.N.'s mother also stated he would benefit from anger management counseling.[4]

---

[3] We disregard this assertion in E.N.'s opening brief, which goes far beyond the record: "[A]ppellant did not possess, use, handle or think about using any weapon to harm another during any of his criminal conduct."

[4] The probation conditions imposed on E.N. by the juvenile court include a requirement that he and his parents cooperate with the probation officer in programs of counseling, including specifically anger management counseling. E.N. does not challenge that condition.

9

E.N. relies on three cases to support his argument that the weapons condition is improper under *Lent*, but those cases do not help him. *In re Frankie J.* (1988) 198 Cal.App.3d 1149 and *In re Todd L.* (1980) 113 Cal.App.3d 14 (*Todd L.*) are cases in which weapons conditions were held to be reasonable based on the particular defendants' criminal and social histories. It does not follow that because weapons conditions were reasonable in those cases, they are not reasonable here. In *In re Martinez* (1978) 86 Cal.App.3d 577, the Court of Appeal considered a warrantless search condition that was imposed on an adult probationer, whose offense was a misdemeanor, and who was subject to a weapons condition. (*Id.* at p. 583.) The weapons condition itself was not at issue there, where the defendant pleaded guilty to battery on a police officer. But even if the weapons condition had been impermissible in *Martinez*, that would be of little import here, because "[a] condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court." (*Todd L.*, *supra*, 113 Cal.App.3d at p. 19.)

In view of E.N.'s criminal and social history, we conclude easily that the weapons condition is reasonably related to preventing E.N.'s future criminality, and that the juvenile court was within its discretion in imposing it. Over a five-month period, from December 2014 until early May 2015, E.N. was involved in what the juvenile court termed a "tidal wave of trouble." He was the subject of multiple wardship petitions and showed a "level of sophistication in [his] criminal activity." The first time E.N. was on prehearing release, he was arrested for driving a stolen car. The second time he was on prehearing release, he cut off the electronic monitoring device that was a condition of remaining out of custody, left home, failed to appear for a disposition hearing on one of the wardship petitions, and was eventually arrested on charges that resulted in another petition being filed for among other things, possession of stolen property.

The Probation Department reported that E.N. was not enrolled in school. He had most recently been enrolled as an 11th-grade student in an independent study program at a high school, but he stopped attending in November 2014, less than a month after he enrolled, and he was dropped from the school's rolls in January 2015. According to the

10

Probation Department, E.N. "completed 42.5 credits out of 94 credits attempted overall." E.N.'s mother told the Probation Department that E.N. would "throw tantrums" when he did not get his way, and that he is "a follower" because he does what his friends do or what they tell him to do. She does not believe his friends are "good people" and said he was "hanging out" with people much older than him. She thought he would benefit from anger management counseling. E.N. denied using drugs other than marijuana, but he was found with methamphetamine and a methamphetamine smoking pipe, and with a camera that contained pictures of him holding a methamphetamine smoking pipe, wrapping a substance in a clear plastic bag, and counting money. During an investigation, E.N. was "extremely fidgety, sweating, and picking at his skin." In the dispositional report filed with the court on May 19, the probation officer noted that E.N. "expressed very little remorse for his actions," and that although E.N. said he had learned his lesson, it was clear to the probation officer that E.N. "did not feel bad for what he had done," and his main focus was to return home.

E.N. had not been arrested with weapons or for crimes of violence. But he was 17 years old, and given his escalating wave of criminal activity in the space of just a few months, including stealing cars and other property, it was not unreasonable for the juvenile court to impose a no-weapons condition so that E.N. would think twice before arming himself to fend off victims or law enforcement. Given his social history, including that he had cut off his ankle monitor, left home, and committed more crimes, and that there were indications that he used and perhaps sold drugs, it was not unreasonable for the juvenile court to formulate a condition that would prevent the possession of weapons that could come to no good end for E.N. or the community.

b. *Vagueness*

E.N. argues that the weapons condition, which prohibits him from possessing, owning or handling "any firearm, knives, weapons, fireworks, explosives or chemicals that can produce explosives," is vague because it does not include a knowledge requirement. Relying primarily on *In re Kevin F.* (2015) 239 Cal.App.4th 351 (*Kevin F.*), he argues that if we do not strike the condition, we should modify it to specify that he is

11

prohibited from knowingly possessing, owning or handling the items in question. E.N. also argues that the condition is vague because the phrase "any firearm, knives, weapons, fireworks, explosives or chemicals that can produce explosives" is unclear. He questions whether the conditions would be violated by possession of common items with legitimate purposes that can be used as weapons, or by possession of common household items, like baking soda, dish soap and vinegar, which can be used in "[a] child's science experiment" to "produce an explosion like a volcano."[5] He argues that if we do not strike the condition, we should modify "firearm, knifes, weapons, fireworks" to "any dangerous and deadly weapon,"[6] and modify "explosives or chemicals that can produce explosives" to "explosives or chemicals that can produce explosives that appellant intends to use as a weapon."

The attorney general argues that E.N. has forfeited these arguments because he did not make them below, and that in any event, the condition is sufficiently clear as imposed by the juvenile court when viewed in connection with its implicit purpose, which is to prevent E.N. from harming others or himself with weapons or explosives. For the proposition that there is no need to add a knowledge requirement, the attorney general relies on *People v. Gaines* (2015) 242 Cal.App.4th 1035, a case that has since been superseded by our Supreme Court's grant of review (review granted Feb. 17, 2016, S231723), pending disposition of *People v. Hall* (2015) 236 Cal.App.4th 1124 (review granted Sept. 9, 2015, S227193), which presents issues including whether an explicit knowledge requirement is constitutionally mandated in certain probation conditions.

---

[5] E.N. does not challenge the juvenile court prohibiting him from possessing explosives, and the term "explosives" is defined in Health and Safety Code section 12000. E.N.'s challenge to the prohibition against "chemicals that can produce explosives" appears to arise from his decision to misread the juvenile court's prohibition against "chemicals that can produce explosives," as "chemicals that can produce an explosion."

[6] E.N. thus proposes we delete the juvenile court's references to firearms, knives and fireworks, but he offers no justification for the deletions.

12

E.N.'s vagueness arguments can be made for the first time on appeal because "they present pure questions of law based solely on facial constitutional grounds and do not require a review of the sentencing record, and are easily remediable on appeal." (*Victor L., supra,* 182 Cal.App.4th at p. 907, citing *Sheena K.*, *supra*, 40 Cal 4th at pp. 889-890.)

We agree with E.N. that adding the phrase "dangerous or deadly" will clarify the term "weapons." We conclude that adding this phrase, and revising the condition slightly to clarify that that the prohibited items are examples of such weapons will clarify the condition as a whole, including the reference to "chemicals that can produce explosives." Thus, we will modify the weapons condition to read: "You are not to possess, own or handle any dangerous or deadly weapons, including firearms, knives, explosives, or chemicals that can produce explosives."

*People v. Moore* (2012) 211 Cal.App.4th 1179 (*Moore*) is instructive here. There, the Court of Appeal upheld a probation condition that read, "Do not own, use or possess any dangerous or deadly weapons, including firearms, knives, and other concealable weapons." (*Id*. at p. 1183.) Following *In re R.P.* (2009) 176 Cal.App.4th 562, the Court of Appeal in *Moore* noted that the phrase " ' "dangerous or deadly weapon" ' " has a "plain, commonsense meaning," and that the probation condition "prohibited possession of items specifically designed as weapons, and other items not specifically designed as weapons that the probationer intended to use to inflict, or threaten to inflict, great bodily injury or death." (*Moore*, *supra*, 211 Cal.App.4th at p. 1186.)

We are not persuaded, however, by E.N.'s argument that the weapons condition must include an explicit requirement that he "knowingly" possess weapons. The probation condition at issue here differs in significant respects from the conditions that were modified by courts in *Victor L.* and other cases cited by E.N.[7] The conditions at

---

[7] In addition to *Victor L.*, which concerned a condition that prohibited being in the presence of weapons or ammunition (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 912-913), E.N. cites *In re Justin S.* (2001) 93 Cal.App.4th 811, 816, concerning a prohibition from associating with gang members; *In re Kacy S.* (1998) 68 Cal.App.4th 704, 713,

issue in those cases required probationers to avoid certain people and places, but "failed to clearly specify what conduct was prohibited, that is, what persons or areas the probationers were required to avoid." (*Moore*, *supra*, 211 Cal.App.4th at p. 1188.) As the Court of Appeal noted in *Moore*, a probationer cannot be punished for possession without proof of knowledge, and therefore it is not necessary to add an explicit knowledge requirement to probation conditions that prohibit the possession of weapons.[8] (*Id.* at pp. 1186-1187.)

   2.    *School Grounds Condition*

      a.    *Reasonableness*

E.N. argues that the school grounds condition is unreasonable under *Lent*, because it requires or forbids conduct that is not itself criminal, and is not related to E.N.'s offenses or to preventing future criminality. The attorney general argues that the condition is reasonable under *Lent* because it relates to criminal conduct, and notes that it "integrates existing criminal law," pointing to Penal Code provisions that prohibit the presence of non-students on school campuses without the permission of school officials—provisions cited by E.N. in his opening brief to support his statement that "[p]resence on a school campus is regulated by statute." The attorney general also argues that the condition is reasonably related to future criminality.

As we do for the weapons condition, we conclude easily that the school grounds condition is reasonably related to E.N.'s future criminality, and that the juvenile court acted within its discretion in imposing it.

_____

concerning a condition that defendant not associate with any persons not approved by the probation officer; and *People v. Lopez* (1998) 66 Cal.App.4th 615, 628, concerning a prohibition from associating with gang members.

[8] We respectfully disagree with the approach taken by our colleagues in Division Four in *Kevin F.*, in which a similar probation condition was modified to include an explicit mens rea of knowing possession. (*Kevin F.*, *supra*, 239 Cal.App.4th at p. 365.) We likewise respectfully disagree with the approach taken by the Third District in *People v. Freitas* (2009) 179 Cal.App.4th 747, 752, cited by E.N., in which a probation condition prohibiting the possession of firearms or ammunition was modified to specify that the possession must be "knowing."

As a condition of his probation, E.N. was required to attend school. His school. The prohibition from being on the grounds of other schools, absent permission, is consistent with the criminal law. (See Pen. Code, § 627 et seq. [governing access to school premises].) It is also consistent with the prevention of E.N.'s future criminality, given his recent social history as we have described it above. Being present on school grounds, other than his own, means that he would not be at his school, or performing community service, or attending Weekend Training Academies, which are conditions of his probation.

As the district attorney stated at the dispositional hearing, the school grounds condition is "reasonably related . . . [to] rehabilitating him from loitering on campuses where he has no business." E.N. has no rejoinder to this commonsense observation.

The *D.G.* decision, which E.N. cites in his opening brief, supports our decision to uphold the trial court's discretion to impose the school grounds condition. In *D.G.*, the Court of Appeal considered objections to a probation condition prohibiting a juvenile from coming within 150 feet of a school campus. (*D.G., supra*, 187 Cal.App.4th at p. 50.) The Court of Appeal ruled that the condition was unreasonable under *Lent*, and modified it to read: " 'Do not enter on the campus or grounds of any school unless enrolled, accompanied by a parent or guardian or responsible adult, or authorized by the permission of school authorities.' " (*Id.* at p. 57.) The result was a condition "generally consistent with Penal Code section 627.2" (*id.* at p. 56), and essentially identical to the one at issue here.[9]

b.      *Overbreadth and Vagueness*

E.N. argues that because the school grounds condition is not limited in application to a " 'fixed time' such as 'while school is in session' " it is unconstitutionally overbroad and vague.

---

[9] E.N. argues that the juvenile court's use of the same condition that was adopted in *D.G.* shows that the condition was not tailored to E.N.'s needs, and is therefore unreasonable. This argument is frivolous.

15

The attorney general argues that E.N. has forfeited this argument because he did not make it below, and that in any event, there is nothing vague or overbroad about the condition, which is tailored to allow E.N. to be on school grounds for legitimate reasons.

As with E.N.'s vagueness challenge to the weapons condition, his vagueness and overbreadth challenges to the school grounds condition can be made for the first time on appeal. (*Victor L., supra,* 182 Cal.App.4th at p. 907, citing *Sheena K.*, *supra*, 40 Cal 4th at pp. 889-890.)

E.N. does not identify any particular unclarity in the condition, which is essential to a vagueness challenge, nor does he identify any respect in which it limits his constitutional rights, which is essential for a challenge for overbreadth. We agree with the attorney general that the school grounds condition clearly notifies E.N. of the prohibited conduct, and that he must refrain from such conduct at all times. And the condition does not prevent E.N. from being on school grounds when he has legitimate reasons to be there.

We conclude that E.N. has not demonstrated that the school grounds condition is unreasonable under *Lent*, or that it is vague or overbroad.

## DISPOSITION

We modify the juvenile court's weapons condition as follows: "You are not to possess, own or handle any dangerous or deadly weapons, including firearms, knives, explosives or chemicals that can produce explosives." In all other respects the juvenile court's dispositional order is affirmed.

                                                     _____

Miller, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.